858 So.2d 601 (2003)
Diane Jenkins ZAPATA, Natural Tutrix of/and on Behalf of her Minor Children, Shelly Ann Shadell and Dale J. Shadell, Jr.
v.
Michael CORMIER, Allstate Insurance Company, Lee Rodrigue, National Automotive Insurance Company, Freddie Doucet as Owner of Dixie Inn, and XYZ Insurance Company.
No. 2002 CA 1801.
Court of Appeal of Louisiana, First Circuit.
June 27, 2003.
*602 Randy O. Lewis, Luling, for Plaintiff-Appellant Diane J. Zapata, Natural Tutrix of/and on Behalf of Her Minor Children, Shelly Ann Shadell and Dale J. Shadell, Jr.
Michael G. Gee, Thibodaux, for Defendant-Appellee Michael Cormier and Allstate Insurance Company.
Gary T. Breedlove, R. Vaughn Cimini, Metairie, for Defendants-Appellees Lee Rodrigue and National Automotive Insurance Company.
William S. Bordelon, Houma, for Defendant-Appellee Freddie Doucet, as Owner of Dixie Inn and First Financial Insurance Company.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
This is an action for wrongful death filed on behalf of the minor children of a bar patron who, after leaving the bar, was struck and killed by an automobile while crossing a highway to his vehicle. The trial court subsequently granted summary judgment in favor of the bar owner and his insurer. We affirm.

FACTS
On April 18, 1999, Lee Rodrigue ("Mr.Rodrigue"), accompanied by Dale J. Shadell ("Mr.Shadell"), and Mr. Shadell's girlfriend, Suzanne Barfield ("Ms.Barfield"), traveled to the beach at Fourchon, in southern Lafourche Parish. While at the beach, the trio drank beer and Mr. Shadell and Mr. Rodrigue also smoked marijuana.
At approximately seven o'clock that evening, the group decided to return home and headed north in Mr. Rodrigue's truck on La. Hwy. 1. Mr. Shadell indicated that he wanted to stop at the Dixie Inn, a bar/dancehall owned by Freddie Doucet ("Mr.Doucet"), and located on the west side of La. Hwy. 1, near the town of Golden Meadow, Louisiana. It was dark when the trio arrived at the Dixie Inn where a band was playing that evening. Vehicles lined both sides of La. Hwy. 1 adjacent to the dancehall. The group drove by the bar once, then turned around, and proceeded back south searching for a place to park. After turning around and proceeding north once again, the trio finally found a parking place along the right shoulder of La. Hwy. 1 almost directly across from the Dixie Inn.
After approximately one hour, Mr. Shadell, Mr. Rodrigue, and Ms. Barfield decided to leave. The trio exited the Dixie Inn and began walking towards Mr. Rodrigue's truck that was parallel parked along La. Hwy. 1 opposite the bar. Before he and Ms. Barfield crossed La. Hwy. 1, Mr. Rodrigue looked back and noticed that Mr. Shadell had stopped to talk to some friends on the front porch of the Dixie Inn. After Mr. Rodrigue and Ms. Barfield made it safely across the highway to the shoulder, they heard a thump. When the pair looked back, they did not see Mr. Shadell. Moments later they learned that Mr. Shadell had been struck as he attempted to *603 cross the highway by a northbound 1998 Mitsubishi Galant operated by Michael Cormier ("Mr.Cormier") and owned by his mother-in-law, Cora Peters.
An accident report prepared by Louisiana State Police revealed that when the vehicle operated by Mr. Cormier struck Mr. Shadell, he was thrown over the vehicle and came to rest in the northbound lane of the highway. Mr. Shadell was then run over by a northbound 1989 Ford Ranger pick-up truck that was traveling some distance behind the vehicle operated by Mr. Cormier. Mr. Shadell was pronounced dead at the scene.
Intoxilyzer breath tests performed on both drivers to detect the presence of alcohol proved negative; however, a blood alcohol test performed on the body of Mr. Shadell by the Louisiana State Police Crime Lab revealed a blood alcohol level of 0.32 grams percent, a level in excess of three times the legal limit. The accident report further indicated that at the time of the accident, Mr. Shadell was dressed in black denim jeans, a black t-shirt, a black bandanna, and brown boots.

ACTION OF THE TRIAL COURT
On December 1, 1999, Diane Zapata ("Ms.Zapata"), in her capacity as the natural tutrix of her minor children, Shelly Ann Shadell and Dale J. Shadell, Jr., filed on their behalf the instant suit for damages. Ms. Zapata named Mr. Cormier, the operator of the vehicle that struck Mr. Shadell; the insurer of the vehicle, Allstate Insurance Company ("Allstate"); Mr. Shadell's host driver, Mr. Rodrigue; Mr. Rodrigue's insurer, National Automotive Insurance Company ("National Automotive"); the owner of the Dixie Inn, Mr. Doucet; and Mr. Doucet's liability insurer initially identified only as XYZ Insurance Company, as defendants therein. As part of her suit, Ms. Zapata alleged that Mr. Doucet, as the owner of the Dixie Inn, was liable based upon his failure to provide adequate parking at his place of business, failure to provide a safe environment for his patrons, and failure to warn customers of a "traplike situation."
On March 30, 2000, Ms. Zapata filed a supplemental and amending petition and identified First Financial Insurance Company ("First Financial"), as the liability insurer of Mr. Doucet, owner of the Dixie Inn. Through this pleading, First Financial was also named as a defendant therein. Later, on April 17, 2000, Ms. Zapata filed a second supplemental and amending petition and named Cora Peters, the registered owner of the 1998 Mitsubishi Galant operated by Mr. Cormier at the time of the accident, as an additional defendant in this matter.[1]
On September 1, 2000, a motion for summary judgment was filed on behalf of Mr. Doucet and First Financial. Following a hearing held on October 20, 2000, the trial court denied said motion because there was a question of whether Mr. Shadell's intoxication was a substantial factor in causing his death, and if so, whether Mr. Doucet was immunized from liability pursuant to the provisions of La. R.S. 9:2800.1. Louisiana Revised Statute 9:2800.1 provides that it is the consumption of intoxicating beverages, rather than the sale of said beverages that is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or another person.
On September 29, 2000, Ms. Zapata moved for and was granted a judgment of partial dismissal after suggesting to the *604 court that the claims brought by her on behalf of her children against Mr. Cormier and Allstate had been fully compromised. Accordingly, the claims brought by Ms. Zapata against these defendants were dismissed with a specific reservation of her rights against all remaining defendants.
Mr. Rodrigue and National Automotive filed a motion for summary judgment, and following a hearing on May 4, 2001, were also dismissed from this litigation pursuant to a judgment signed by the trial court on May 16, 2001.
On June 14, 2001, Ms. Zapata filed a third supplemental and amending petition clarifying the allegations made in her original petition and, further, alleging that the defendant Mr. Doucet, in his capacity as the owner of the Dixie Inn, knew of the defect in his premises and failed to remedy or warn Mr. Shadell, and that Mr. Doucet is therefore strictly liable for the damages caused by said defect. Ms. Zapata further alleged that the said defect consisted of a failure to provide adequate parking and adequate lighting for the safe entry and exit of patrons to his establishment.
On April 18, 2002, defendants Mr. Doucet and First Financial re-filed their motion for summary judgment. In addition to an accompanying legal memorandum, Mr. Doucet and First Financial included a copy of the deposition testimony of Mr. Shadell's companion, Ms. Barfield, which revealed that the view of the roadway was unobstructed in both directions; the blood alcohol analysis performed on Mr. Shadell by the Louisiana State Police Crime Laboratory, which reflected a blood alcohol result of 0.32 grams percent; and an affidavit of Dr. William George, Professor of Pharmacology at Tulane University, regarding the effects of a blood alcohol level of 0.32 grams percent. Based upon these facts, Mr. Doucet and First Financial argued that it was clear that Mr. Shadell's death was caused by his inebriated condition, and not the parking lot of the Dixie Inn. Following a hearing held on May 24, 2002, the trial court granted the motion for summary judgment urged on behalf of Mr. Doucet and First Financial. A judgment to this effect was signed on June 12, 2002. It is from this judgment that Ms. Zapata now appeals.

ASSIGNMENT OF ERROR
In connection with her appeal in this matter, Ms. Zapata presents the following assignment of error for consideration by this court:
Whether or not the trial judge erred in granting summary judgment in favor of Freddie Doucet, as owner of the Dixie Inn, based on the assertion that he was entitled to immunity granted under La. R.S. 9:2800.1.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751 p. 5 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966 B. Summary judgment is favored and "is designed to secure the just, speedy, and inexpensive determination of every action." La.Code Civ. P. art. 966 A(2).
The burden of proof on a motion for summary judgment is set forth in La.Code Civ. P. art. 966 C(2):

*605 The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
The initial burden of proof remains with the mover and is not shifted to the nonmoving party until the mover has properly supported the motion and carried the initial burden of proof. Only then must the non-moving party "submit evidence showing the existence of specific facts establishing a genuine issue of material fact." Scott v. McDaniel, 96-1509, p. 5 (La.App. 1 Cir. 5/9/97), 694 So.2d 1189, 1191-1192, writ denied, 97-1551 (La.9/26/97), 701 So.2d 991. If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La.Code Civ. P. arts. 966 and 967.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Sanders, 96-1751 at 7, 696 So.2d at 1035. Because it is the applicable substantive law that determine materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 6 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528.
One of the questions posed by this appeal is whether the provisions of La. R.S. 9:2800.1 provide immunity from tort liability to a bar owner upon proof that a patron's intoxication was a substantial factor in the cause of the accident. A secondary question in this appeal is whether under the unique particular facts of this case, did the bar owner owe a legal duty to Mr. Shadell?
Louisiana Revised Statute 9:2800.1 provides in pertinent part as follows:
§ 2800.1. Limitation of liability for loss connected with sale, serving, or furnishing of alcoholic beverages
A. The legislature finds and declares that the consumption of intoxicating beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person.
B. Notwithstanding any other law to the contrary, no person holding a permit under either Chapter 1 or Chapter 2 of Title 26 of the Louisiana Revised Statutes of 1950,[2] nor any agent, servant, or employee of such a person, who sells or serves intoxicating beverages of either high or low alcoholic content to a person over the age for the lawful purchase thereof, shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, *606 because of the intoxication of the person to whom the intoxicating beverages were sold or served.
[FN-1: R.S. 26:1 et seq. and 26:241 et seq.]
In granting summary judgment, the trial judge opined:
So, [counsel for Ms. Zapata] is in a box with the issue of intoxication. Can't get out of it. He doesn't want Mr. Shadell's death to be due to his intoxication but yet he wants Mr. Shadell to be intoxicated because it aids in his claim about what the duty of Mr. Doucet is in this case.
So having said all of that, then I'm going to go back to where we left off the last time and that was my saying that a genuine material issue of fact was whether or not Mr. Shadell's intoxication was a substantial factor in causing his death. Based on the affidavit of Dr. George, I don't think that that is any more a genuine issue of material fact. I think it is conclusive, as far as I'm concerned, that any trier of fact would have to find that his intoxication was a material, certainly a substantial factor in causing his death. It doesn't rule out all other factors, but it was certainly a substantial factor in this case.
So, with that finding, then I think I am required under the jurisprudence to go back to 9:2800.1, because if that's the case, then Mr. Doucet is entitled to the immunity afforded him by 9:28.1(sic). And with that, I think I am not required, but I think there is, certainly as a matter of law, good reason to grant the motion.
And in reaching this point, I want to say for the record that although I think Mr. Doucet has duties as the owner of premises, I don't think that the situation of the parking lot and the circumstances of drivers having to cross a road to reach their parked vehicles, I don't think that that creates or puts a duty-breach situation on Mr. Doucet's head.
Ms. Zapata contends that Mr. Doucet, as owner of the Dixie Inn, is not entitled to tort immunity pursuant to La. R.S. 9:2800.1, absent proof that Mr. Doucet, or any of his employees or agents, served or sold intoxicating beverages to Mr. Shadell who thereafter consumed same. Ms. Zapata claims that based upon the evidence submitted, Mr. Shadell's intoxication was due to alcohol and marijuana that Mr. Shadell had consumed prior to his arrival at the Dixie Inn, and did not result from any sale, service, or consumption of alcohol at the Dixie Inn. Accordingly, Ms. Zapata claims that the facts do not satisfy the requirements of La. R.S. 9:2800.1(B), and that Mr. Doucet, as the owner of the Dixie Inn, is not immune from liability pursuant to La. R.S. 9:2800.1(A) merely because Mr. Shadell was intoxicated.
In response, Mr. Doucet and First Financial argue that the deposition testimony of both Ms. Barfield and Mr. Rodrigue contained in the record, proves that Mr. Shadell was served at least one beer, if not two or three, at the Dixie Inn. Mr. Doucet further asserts that it would be more accurate to state that the amount of alcohol that Mr. Shadell was served at the Dixie Inn was not solely responsible for the high level of intoxication that Mr. Shadell had at the time of the accident, and that he had attained a high level of intoxication prior to having been served at the Dixie Inn.
For the immunity provisions of La. R.S. 9:2800.1 to apply to a particular bar owner, his agent, servant, or employee, there are several requirements: 1) the bar owner must hold a permit under either Chapter 1 or Chapter 2 of Title 26 of Louisiana Revised Statutes of 1950; 2) the bar owner, its agent and servants or employees, *607 sell or serve intoxicating beverages of either high or low alcoholic content to a person over the age for a lawful purchase thereof; 3) the purchaser thereof suffers an injury off the premises including wrongful death and property damage; 4) this injury or accident was caused by the intoxication of the person to whom the intoxicating beverages were sold or served.
There is no requirement under this statute that the intoxication of the individual is caused by the alcohol purchase from the bar owner. The intoxication could just as well been acquired prior to the purchase or after at another establishment.
Upon review of this matter, there is no question of fact that Mr. Doucet was a person holding a permit under either Chapter 1 or Chapter 2 of Title 26 of Louisiana Revised Statutes of 1950. There is no question of fact that Mr. Shadell was intoxicated at the time of the accident. There is no question of fact that an agent, servant, or employee of Mr. Doucet sold alcoholic beverages of either high or low alcoholic content to Mr. Shadell. There is no question of fact that Mr. Shadell was a person over the age for the lawful purchase thereof. There is no question of fact that Mr. Shadell was injured off of the premises. For this reason, the decision by the trial court to grant summary judgment was appropriate.
Further, for Ms. Zapata to be successful against Mr. Doucet, she must demonstrate and prove that Mr. Doucet breached a duty owed to Mr. Shadell. Under the duty-risk analysis established by the Louisiana Supreme Court and set forth in Forest v. State, Louisiana Department of Transportation and Development, 493 So.2d 563, 569 (La. 1986), Ms. Zapata would be required to prove: 1) Mr. Doucet's conduct was a cause in fact of the accident;
2) Mr. Doucet owed a legal duty which encompassed the risk of harm to which Mr. Shadell was exposed; 3) Mr. Doucet breached that duty; and 4) the damages sustained by Mr. Shadell's minor children as a result of the wrongful death of their father.
This accident occurred on La. Hwy. 1 and not on the premises or property of Mr. Doucet. Mr. Doucet had no duty or "garde" over this property. No action on the part of Mr. Doucet was a cause in fact of the accident, and Mr. Doucet owed no legal duty to Mr. Shadell. Following a thorough review of the record of this case, under the unique facts of this case, we do not find that a duty was breached by the owner of the Dixie Inn, Mr. Doucet. Thus, we affirm the trial court's grant of summary judgment. This assignment of error is without merit.

CONCLUSION
For the above and foregoing reasons, we affirm the judgment of the trial court granting the motion for summary judgment filed on behalf of defendants, Freddie Doucet, as the owner of the Dixie Inn, and First Financial Insurance Company. All costs associated with this appeal are assessed against the plaintiff, Ms. Diane Jenkins Zapata, in her capacity as the natural tutrix of and on behalf of her minor children, Shelly Ann Shadell, and Dale J. Shadell, Jr.
AFFIRMED.
NOTES
[1] There is no indication from the record before us that Ms. Peters was ever served with a copy of this pleading or ever made a formal appearance in this lawsuit.
[2] As noted above, Section B of La. R.S. 9:2800.1 contains a footnote that reads: "R.S. 26:1 et seq. and 26:241 et seq."